# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DAVID ATIENZA, CARLOS OBED MEJIA VELASQUEZ, AND MATTHEW BIAGGI<br><br>Petitioners,<br><br>vs.<br><br>DEPARTMENT OF PUBLIC HEALTH AND SOCIAL SERVICES<br><br>GOVERNMENT OF GUAM,<br><br>Respondents. | Superior Court Case No. <u>SP0183-20</u><br><br>**DECISION AND ORDER** |

Upon the conclusion of the evidentiary hearing on October 16, 2020, the Court issued a ruling from the bench granting in part and denying in part the Verified Petition for Writ of Habeas Corpus, Alternative Writ of Mandamus, and Injunctive Relief filed by Petitioners David Atienza, Carlos Obed Mejia Velasquez, and Matthew Biaggi. The Court found that Petitioners Atienza and Velasquez posed no substantial risk of transmitting COVID-19 because of evidence that they were infected and recovered within the previous three months. *See* 10 GCA § 19604(b)(5). The Court also found that when Governor Lourdes Leon Guerrero rescinded her reliance on 10 GCA § 3333 in Executive Order ("EO") 2020-33, the section ceased to provide grounds for release from quarantine. Finally, the Court found that DPHSS' quarantine of Petitioner Biaggi was reasonably necessary, even if involuntary. This Decision and Order memorializes the Court's ruling.

## I.  PROCEDURAL BACKGROUND

On October 16, 2020, Atienza, Velasquez, and Biaggi filed a petition for a writ of habeas corpus pursuant to 48 USCA § 1421b(e) and (l), 8 G.C.A. § 135.10, 7 G.C.A. §§ 20301and 30201, and Chapter 19 of Title 10 Guam Code Annotated.  On October 16, 2020, the Court heard testimony from Atienza, Velasquez, and Biaggi.  At the hearing, the Court included the present case as part of the consolidated hearing.  The Court therefore incorporates testimony and evidence heard before the Court on September 17-19, 22-26, and 28-30, and October 1-3, 2020.

## II.  FINDINGS OF FACT

The Court makes the following findings of fact by a preponderance of the evidence:

1.  Petitioner David Atienza is an anthropology professor at the University of Guam.

2.  Atienza departed Guam for California on October 8, 2020; and one week later, on October 15, 2020, he returned to Guam.

3.  At the hearing, Atienza testified that in or around the end of July he experienced symptoms consistent with contracting COVID-19.  Atienza did not get tested at that time.

4.  On September 16, 2020, Atienza received the results of a blood test taken on September 14 that indicated he had past exposure to COVID-19.  *See* Ex. BBB.

5.  Atienza testified that, at the time of the hearing, he had not experienced any symptoms consistent with those he experienced in July.

6.  Upon arrival, DPHSS presented Atienza with a voluntary acknowledgment form, which Atienza refused to sign. Atienza claims that his quarantine was involuntary.

7.  DPHSS then provided Atienza with a written directive and transported him to the Dusit Thani, a government quarantine facility, for a 14-day quarantine.

8.  On October 14, Petitioners Carlos Obed Mejia Velasquez and Matthew Biaggi arrived in

Guam from California, with transit from Hawaii.[1] Velasquez testified that he is a missionary and Biaggi testified that he is a seminarian. Both indicated that their destination was a parish church here on Guam.

9. Velasquez testified that about two months ago he received a negative PCR test result. In the time since the test, however, he testified that he contracted COVID-19.

10. To confirm that he had the virus, on October 2, 2020, he took a serology test that confirmed that his antibody count indicated that he previously contracted COVID-19. The test indicated that the "virus-specific antibodies. . . can persist in the blood for several weeks/months after the onset of symptoms." Ex. AAA. Individuals with antibodies have "most likely gotten the disease and recovered, or recovering from it and not very contagious, if at all." *Id.*

11. Velasquez and Biaggi both testified that, as of the time of the hearing, they had not experienced any COVID-19 symptoms.

12. Upon arrival, DPHSS presented Velasquez and Biaggi with a voluntary acknowledgment form, which they refused to sign. Velasquez and Biaggi claim that their quarantine was involuntary.

13. DPHSS then provided Velasquez and Biaggi with a written directive and transported them to the Dusit Thani, a government quarantine facility, for a 14-day quarantine.

## III. LAW AND DISCUSSION

In their Petition, Atienza, Velasquez, and Biaggi make individual claims for immediate transfer to home quarantine. Some of their claims overlap. Atienza argues that under section

---

[1] While not in their petition or explicitly testified to, certain facts indicate that Velasquez and Biaggi arrived on the same flight. First, they arrived on the same day, from the same location, and with the same transit. Second, they were quarantined in the same room at the Dusit Thani. Finally, they both testified that their home quarantine would occur at the same parish.

3333, since he was gone from Guam for one week and has proof that he previously contracted COVID-19, he is excluded from quarantine. Atienza and Velasquez argue that previously contracting COVID-19 indicates that they did not pose a substantial risk of transmitting COVID-19. Atienza, Velasquez, and Biaggi all argue that their quarantine is involuntary. The Court now addresses each of these arguments.

### 1. 10 GCA § 3333

Petitioner Atienza first argues that section 3333 excludes him from government quarantine. The Court previously addressed section 3333 as applied to government facility quarantine in *Martinez v. DPHSS*, SP0132-20 (Dec. and Order (Oct. 6, 2020)). In *Martinez*, the Petitioners entered Guam on September 14. As a result, the Court analyzed the legality of their quarantine under EO 2020-29,[2] in which the governor explicitly referenced section 3333.[3] On September 20, 2020, however, the Governor issued EO 2020-33, which, pursuant to section 3333(d), explicitly rescinded her reliance on section 3333. Since Atienza arrived in Guam on October 15, 2020, the governing EO is EO 2020-33. Accordingly, the statute no longer remains in effect and does not apply.

### 2. Proof of contracting COVID-19 within three months of arrival

Petitioners Atienza and Velasquez argue that the evidence presented establishes that they contracted COVID-19 within the last three months, and, under section 19604(b)(4), they do not

---

[2] As extended by EO 2020-30 on September 2, 2020; EO 2020-31 on September 11, 2020; and, while after the Martinez returned, EO 2020-32 on September 17.

[3] Under EO 2020-29, the Governor mandated the quarantine of all incoming travelers:
> "*Pursuant to Section 3333*, Article 3, Chapter 3, Title 10, Guam Code Annotated, all persons entering Guam shall be subject to quarantine pursuant to this Section and Section 19604 and 19605 of Article 6, Chapter 19, Title 10, Guam Code Annotated. Such quarantine will be administered in accordance with applicable DPHSS Guidance, which shall include quarantine in a government qualified facility."

Executive Order 2020-29 (emphasis added).

pose a substantial risk of transmitting COVID-19. The question then for the Court is whether the evidence Atienza and Valasquez presented is sufficient to prove that they previously contracted COVID-19, and, if so, whether that satisfies section 19604(b)(4).

At the hearing, Atienza and Velazque presented serology tests as proof they previously contracted COVID-19. "A serology test measures for virus antibodies in the blood and better reflects the condition of individuals that previously contracted COVID-19. . . . Depending on the level of antibodies measured, the test determines whether the individual previously had COVID-19." *Ikei v. DPHSS*, SP0138-20 (Findings of Fact and Concs. of Law *5 (Oct. 27, 2020)). Velazquez's test indicated the presence of COVID-19 antibodies in his blood. Atienza's test indicated he had past exposure to COVID-19. The Court is satisfied that the serology tests are sufficient to establish that both had COVID-19, however when exactly Atienza and Valasquez contracted the virus is not evident .

Atienza testified at the hearing that around the end of July he experienced symptoms consistent with contracting COVID-19. Since he did not get tested, he procured a test on September 16, 2020. Velazquez testified that approximately two months prior to the hearing, he received a negative PCR test. Evidence of the test was not introduced. Sometime during the following two months, he testified that he contracted the virus, but did not get tested. After he recovered, to confirm that he did contract COVID-19, Velazquez procured a serology test on October 2, 2020. The Court credits Atienza and Velasquez's testimony and finds that both contracted and recovered from COVID-19 within three months of the hearing.

The Court next turns to the question of whether contracting COVID-19 within the preceding three months qualifies under section 19604(b)(4). Section 19604(b)(4) prescribes that "quarantined individuals must be immediately released when they pose no substantial risk of

transmitting a contagious or possibly contagious disease to others." 10 GCA § 19604(b)(4).

The Court recently addressed this issue in *Ikei*, SP0138-20. In the course of that case, DPHSS released two of five members of the Ikei family from home quarantine because they presented evidence of a positive COVID-19 test from the preceding three months and displayed no symptoms. In doing so, DPHSS determined that the individuals did not pose a substantial risk of transmitting COVID-19. This determination was also supported by the scientific evidence presented at the consolidated hearing which indicated that individuals who have recovered from COVID-19 within three months are much less likely to be reinfected. *See Ikei*, SP0138-20 (Findings of Fact and Concls. of Law *5 (Oct. 27, 2020)). The three remaining members of the Ikei family were not released because they did not have evidence of previously contracting the virus. The Court determined, however, based on the evidence presented at the hearing, that the remaining individuals in quarantine also contracted COVID-19 at the same time. Since they also had no symptoms, the Court found that they also did not pose a substantial risk of transmitting COVID-19 three months after their infection. *See id.* at 26-27.

Here, the Court is satisfied that both Atienza and Velasquez contracted COVID-19 within the previous three months and credits their testimony that, as of the hearing date, neither had experienced COVID-19 symptoms. As the evidence in *Ikei* indicates, they have little to no chance to be reinfected. Velasquez's test results confirmed this by stating he would not likely be contagious, if at all. Since both individuals also agree to quarantine at their residential locations, the Court concludes that Atienza and Velasquez do not pose a substantial risk of transmitting COVID-19 to others, pursuant to 19604(b)(4).

### 3. Involuntary quarantine

Petitioner Biaggi's sole claim that the involuntariness of his government facility

quarantine is grounds for transfer to home quarantine.[4]  The Court in *Igros v. DPHSS*, SP0127-20 twice ruled that the current government quarantine of incoming passengers--which all Petitioners fall under--is a mandatory quarantine; and that section 19605 provides the procedure for the quarantine.  *See Igros*, SP0127-20 (Findings Of Fact and Concls. Of Law, Sep. 12, 2020); *id.* (Dec. and Order re Mot. Reconsideration (Oct. 15, 2020)).  Under section 19605, the issue of whether an individual voluntarily consents to quarantine or enters quarantine involuntarily is not a factor in determining the legality of the quarantine.  Rather, the Court reviews whether DPHSS complied with section 19605 when mandating quarantine in a government facility.

Here, the evidence presented establishes that upon quarantining Biaggi, DPHSS provided him a written directive as required under section 19605.  At the time of the hearing, Biaggi was on his second day of quarantine.  The governing DPHSS regulations, Rev10, instructs that Biaggi will be offered a test on or around day six, and upon the receipt of a negative test result, DPHSS will transfer him to home quarantine.  The Court in *In re Jones*, SP0141-20 held that individuals quarantined under this regulation is reasonably necessary and the least restrictive means.  *See In re Jones*, SP0141-20 (Findings of Fact and Concls. of Law (Oct. 27, 2020)).  As DPHSS also followed Guam law in this regard, the Court finds no issue with DPHSS' quarantine of Biaggi.

## IV.  CONCLUSION AND ORDER

David Atienza and Carlos Obed Mejia Velasquez both stipulated that they agree to

---

[4] At the hearing, Petitioner Biaggi raised that his religious needs were not being met.  He testified that he is a seminarian and as part of the exercise of his religious beliefs, he receives daily sacraments.  In closing, his counsel argued that the Dusit Thani does not provide daily sacraments.  Section 19604(b)(8) instructs that "[t]o the extent possible, cultural and religious beliefs should be considered in addressing the needs of individuals, and establishing and maintaining isolation and quarantine premises."  Since it was unclear at the hearing what "extent possible" DPHSS could accommodate Biaggi's religious requests, the Court did not rule on the issue and the parties agreed to try and resolve the issue outside of the Court.

quarantine at home for the remainder of their 14-day quarantine. Accordingly, DPHSS is

ORDERED to transfer David Atienza and Carlos Obed Mejia Velasquez to home quarantine as

their continued quarantine in a government facility is not reasonably necessary. *See* 10 GCA

19604(b)(4). The Court further orders that Matthew Biaggi remain in quarantine but be offered a

test on the sixth day in compliance with DPHSS' policy.

SO ORDERED this 29th day of October 2020 *nunc pro tunc* to 16 October 2020.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

Appearing Attorneys:
Jacqueline Taitano Terlaje, Esq., and Assistant Public Defender John Morrison, Public Defender
    Services Corporation, for Petitioners David Atienza, Carlos Obed Mejia Velasquez, and
    Matthew Biaggi
Assistant Attorneys General Joseph A. Perez, and Janice M. Camacho for Respondent
    Department of Public Health and Social Services